UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMANTHA LYNN THORNTON,

                    Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

DECISION & ORDER

18-CV-0718MWP

## **PRELIMINARY STATEMENT**

        Plaintiff Samantha Lynn Thornton ("Thornton") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income Benefits ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been assigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 15).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 13). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 10-20).[1] Under step one of the process, the ALJ found that Thornton had not engaged in substantial gainful activity since October 7, 2014, the application date. (Tr. 12). At step two, the ALJ concluded that Thornton had the severe impairments of "affective disorder(s) and anxiety disorder(s)." (*Id.*). The ALJ concluded that Thornton also suffered from other impairments that were not severe. (*Id.*). At step three, the ALJ determined that Thornton did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 12-15). With respect to Thornton's mental limitations, the ALJ found that she suffered from moderate limitations in interacting with others and concentrating, persisting, or maintaining pace, and mild limitations in understanding, remembering, or applying information and adapting or managing oneself. (*Id.*). The ALJ concluded that Thornton had the RFC to perform the full range of work at all exertional levels, but could only perform unskilled work that did not involve working around large crowds of people or performing fast-paced assembly work, and which limited interaction with others to approximately one-third of the workday and provided regular work breaks approximately every two hours. (Tr. 15-19). At steps four and five, the ALJ determined that Thornton had no relevant past work and that jobs existed in the national economy that Thornton could perform, including the positions of

---

[1] The administrative transcript shall be referred to as "Tr. __."

housekeeper/cleaner and routing clerk. (Tr. 19-20). Accordingly, the ALJ found that Thornton was not disabled. (*Id.*).

III.   **Thornton's Contentions**

Thornton contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 10-1, 14). First, Thornton challenges the determination on the grounds that the ALJ failed to properly develop the administrative record. (Docket ## 10-1 at 17-23; 14). Next, Thornton maintains that the ALJ improperly evaluated her credibility. (Docket # 10-1 at 23-26). According to Thornton, the ALJ improperly discounted her credibility based upon her failure to take medications as prescribed without evaluating the reasons for her alleged noncompliance. (*Id.*).

IV.    **Analysis**

I turn first to Thornton's argument that the ALJ placed undue weight on her alleged noncompliance with medication in evaluating her subjective complaints. (*Id.*). This assessment should reflect a two-step analysis. *See* 20 C.F.R. §§ 404.1529, 416.929.[2] First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptom. *See id.* Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]." *Id.* The relevant factors for the ALJ to weigh include:

---

[2] These regulations were amended effective March 27, 2017, and the amended versions were in effect at the time of the ALJ's decision. *See id.* The evaluation of symptoms outlined in these regulations was previously referred to as a "credibility" assessment. Recent SSA rulings have clarified that the sub-regulatory policy will no longer use the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304, *1 (Oct. 25, 2017).

5

> (1) the claimant's daily activities; (2) the location, duration,
> frequency and intensity of the claimant's pain or other symptoms;
> (3) precipitating and aggravating factors; (4) the type, dosage,
> effectiveness, and side effects of any medication the claimant takes
> or has taken to alleviate her pain or other symptoms; (5) treatment,
> other than medication, the claimant receives or has received for
> relief of her pain or other symptoms; (6) any measures the claimant
> uses or has used to relieve her pain or other symptoms; and
> (7) other factors concerning the claimant's functional limitations
> and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)).

Although an ALJ may properly consider a claimant's noncompliance with recommended treatment when evaluating her subjective symptoms, the ALJ may not discount a claimant's subjective symptoms based upon noncompliance with treatment recommendations without first considering potential explanations for the noncompliance. *See* SSR 16-3p, 2017 WL 5180304 at * 9 ("[w]e will not find an individual's symptoms inconsistent with the evidence in the record on th[e] basis [of noncompliance] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints"); *Greene v. Berryhill*, 2018 WL 8646666, *8 (D. Conn. 2018) ("[b]efore drawing an inference, the ALJ must consider possible reasons he or she may not comply with treatment") (internal quotations omitted).

Here, the ALJ found that Thornton's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 16). Central to the ALJ's conclusion was Thornton's failure to take medications as prescribed by her mental health provider. (Tr. 16-18). Indeed, the ALJ repeatedly referred to Thornton's noncompliance in the decision and questioned her about it during the hearing. (Tr. 16-18, 38-40). For instance, he mentioned

6

Thornton's compliance issues in each of the four paragraphs summarizing Thornton's mental health treatment. (Tr. 16-17). The ALJ ultimately discounted Thornton's allegations of disabling mental health symptoms because she "has been highly inconsistent with taking her prescribed medications." (Tr. 18).

A careful review of the record reveals that the ALJ apparently overlooked an explanation for Thornton's noncompliance with prescribed medications. Specifically, notes from Thornton's medication management appointments suggest that Thornton had a "fear of taking medication" as a result of her parents' opiate abuse when she was a child. (*See*, *e.g.*, Tr. 217, 231, 393, 419). In response to the ALJ's questioning during the hearing, Thornton explained that her reluctance to take prescribed medications stemmed from a history of drug abuse in her family. (Tr. 39). According to Thornton, her treating sources attempted to accommodate her anxiety by prescribing different medication regimens and attempting to wean her from certain prescribed medications. (Tr. 39-40).

The ALJ did not address Thornton's professed fear in his decision. Rather, he characterized her hearing testimony as an expression of dislike for certain drugs; he then declined to credit that purported explanation on the grounds that it was inconsistent with evidence that there were certain medications that she did consistently take. (Tr. 18). I find that the ALJ's failure to evaluate Thornton's fear of drug dependence stemming from her family history constitutes error warranting remand. *See Greene v. Berryhill*, 2018 WL 8646666 at *9 (remanding where ALJ failed to consider plaintiff's explanation for lack of physical therapy or medications; "it is recommended that the ALJ consider [plaintiff's] explanations for her failure to engage in a more aggressive treatment regimen"); *White v. Berryhill*, 2018 WL 2926284, *6 (D. Conn. 2018) ("an ALJ must consider the possible reasons a claimant has not adhered to

7

treatment before weighing the claimant's noncompliance against his claim for benefits"); *see also Pabon v. Colvin*, 2015 WL 5692845, *6 (W.D.N.Y. 2015) ("to the extent that there are periods of noncompliance in the record, the ALJ's reliance on them to find [p]laintiff's complaints not credible, without first inquiring into the reasons for any noncompliance, misapplies the proper legal standard"); *Chaussee v. Colvin*, 2015 WL 13729875, *7 (D. Conn. 2015) ("[t]o the extent the ALJ drew a negative inference from plaintiff's non-treatment or noncompliance, it was error to do so where it is not apparent the ALJ considered any explanation for this conduct"), *report and recommendation adopted by*, 2016 WL 1170915 (D. Conn. 2016).

The likelihood that the ALJ simply overlooked the explanation for Thornton's noncompliance is heightened because the limited records obtained from Horizon Health ("Horizon"), where Thornton received mental health psychotherapy and medication management from 2014 through 2016, did not include notes from her therapy sessions.[3] (Tr. 17-23, 48-49, 274, 279, 294, 336). The record suggests that Jennifer Lilleby, MA, provided individual counseling to Thornton on a biweekly basis between 2014 and 2016. (Tr. 391-529). It is certainly reasonable to expect that therapy session notes would address issues relating to mental health conditions, symptoms and functioning that are not reflected in medication management appointment notes. Relevant here, those notes may highlight or elucidate Thornton's apparent reluctance to take prescription medications – the issue that must be evaluated by the ALJ on remand. Accordingly, the ALJ is encouraged to consider whether to obtain those treatment notes, including by subpoena, if necessary.[4] *See*, *e.g.*, *Tammy H. v. Comm'r of Soc. Sec.*, 2019

---

[3] The record did include Thornton's initial evaluation records and notes from her medication management appointments, initially with Chelsea Kendra ("Kendra"), NP, and subsequently with Mark Vallaro ("Vallaro"), MD. (Tr. 391-529).

[4] Having concluded that remand is warranted on other grounds, I need not determine whether, as Thornton also contends (Docket # 10-1 at 18-23), the ALJ failed to adequately develop the record because he did not obtain her individual therapy session notes.

8

WL 4142639, *11 (N.D.N.Y. 2019) ("in light of the substantial lack of treatment notes . . . , and the fact that the ALJ's disability determination relied heavily on plaintiff's mental limitations, the ALJ should have made every reasonable effort to fully develop the record[,] . . . including by subpoena if necessary, to collect the missing therapy notes") (internal quotations omitted); *Gardner v. Colvin*, 2019 WL 3753797, *17 (E.D.N.Y. 2019) (remanding where ALJ did not attempt to obtain plaintiff's psychotherapy notes); *Harris ex rel. N.L.K. v. Berryhill*, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018) ("[t]he fact that the essential treatment records were requested, but not received, does not obviate the ALJ's independent duty to develop the record, particularly since the ALJ could have exercised his power to subpoena them") (internal quotations omitted); *Morales v. Berryhill*, 2018 WL 679566, *16 (S.D.N.Y.) (failure to obtain treatment records including biweekly therapy sessions and monthly medication management meetings created obvious gap in the record particularly because "the ALJ's duty to develop the record is heightened in instances where the claimant alleges that he or she suffers from a mental illness"), *report and recommendation adopted by*, 2018 WL 679492 (S.D.N.Y. 2018); *Rizzo v. Berryhill*, 2017 WL 3578701, *16 (S.D.N.Y. 2017) (missing treatment records from weekly therapy sessions with licensed clinical social workers created an obvious gap in the record); *Merritt v. Comm'r of Soc. Sec.*, 2016 WL 6246436, *5 (W.D.N.Y. 2016) ("[k]nowing that a lack of documentation was problematic . . . , the ALJ could have done what counsel did – contact the [provider], several times if necessary, to obtain the complete record[;] . . . [t]his failure warrants reversal and remand"); *Ajibose v. Colvin*, 2016 WL 8711342, *8 (E.D.N.Y. 2016) (ALJ failed to develop record where claimant testified that she attended therapy sessions and medication management appointments but record contained only notes from initial or diagnostic screenings).

## **CONCLUSION**

Accordingly, the Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **DENIED**, and Thornton's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       February 11, 2020